Deborah Rosenthal (SBN 184241)
drosenthal@simmonsfirm.com
SIMMONS BROWDER GIANARIS ANGELIDES
 & BARNERD LLC
455 Market Street, Suite 1150
San Francisco, CA  94105
Phone:  (415) 536-3986   /Fax: (415) 537-4120

[*Additional counsel listed on signature page*]

*Attorneys for Plaintiffs Vicki and Richard Sutcliffe and
all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICKI  and RICHARD SUTCLIFFE,<br> individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>- against -<br><br>WELLS FARGO BANK N.A. a national bank, for itself and d/b/a Wells Fargo Home Mortgage, a division of Wells Fargo Bank N.A., and DOES 1-100 inclusive,<br><br>Defendants | Case No. 3:11-cv-06595-JCS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>The Hon. Joseph C. Spero<br>Date: April 27, 2012<br>Time: 9:30 a.m.<br>Courtroom: G |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .................................................................................................................. ii

INTRODUCTION AND ARGUMENT SUMMARY .................................................................... 1

APPLICABLE LEGAL STANDARD ............................................................................................ 3

ARGUMENT .................................................................................................................................. 3

    I.      PLAINTIFFS' CLAIMS ARE RIPE ............................................................... 3

    II.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED .......................................... 6

          A.     Plaintiffs' Claims Are Not Preempted by the National Bank Act ............. 6

          B.     Plaintiffs' Claims Are Not Preempted by HAMP .................................... 10

    III.    PLAINTIFFS' CLAIMS UNDER THE UCL, FOR BREACH OF CONTRACT, AND FOR RESCISSION SHOULD NOT BE DISMISSED ........................................ 12

          A.     Plaintiffs May Sue Under California Law ............................................... 12

          B.     Plaintiffs State a Claim Under the UCL .................................................. 16

          C.     Plaintiffs State a Claim for Breach of Contract ...................................... 18

               1.     *The TPP Reflects Mutual Assent* ................................................ 19

               2.     *The TPP Was Sufficiently Definite* .............................................. 22

               3.     *Wells Fargo's Promises Were Supported by Consideration* ......... 23

               4.     *Plaintiffs Sufficiently Allege Damages* ........................................ 24

          D.     Plaintiffs State a Claim for Rescission .................................................... 24

CONCLUSION ............................................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

*Page*

3

**Cases**

4

*Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174 (2010).......................................... 4

5

*Alexander-Jones v. Wal-Mart Stores, Inc.*, 2012 WL 215171 (N.D. Cal. Jan 24, 2012)................ 5

6

*Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011).... 19, 22

7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................... 3

8

*Astra USA, Inc. v. Santa Clara County*, --- U.S. ----, 131 S. Ct. 1342 (2011)............................. 12

9

*Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ........................................ 8

10

*Ayala v. World Savings Bank*, 616 F.Supp.2d 1007 (C.D. Cal. 2009)........................................ 7

11

*Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006)........................................................ 8

12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 555 (2008) ...................................................... 3

13

*Bertoli v. Wachovia Corp., FSB*, 2011 WL 5244687 (N.D. Cal. Nov. 3, 2011)................... 7, 8, 10

14

*Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342 (D. Mass. 2011)........................ 11, 19, 23

15

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 45 Cal. Rptr. 3d 692 (2006) ........................ 22

16

*Casares-Castellon v. Holder*, 603 F.3d 1111 (9th Cir. 2010)................................................. 8

17

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548
   (1999) ................................................................................................................ 16

18

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) .................................. 18

19

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Ca. 2010) .............................. 14

20

*Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996)........................................................ 6

21

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (1987)........................................... 14

22

*Cuevas v. Atlas Realty/Fin. Services, Inc.*, 2008 WL 268981 (N.D. Cal. Jan. 30, 2008) ............... 7

23

*Darcy v. CitiFinancial, Inc.* 2011 WL 3758805 (W.D. Mich. Aug. 25, 2011) ............... 18, 21, 22

24

*Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862 (2010) ........................................ 25

25

*DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 2382404 (N.D. Cal. June 9, 2010)....................... 15

26

*Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036 (1999) .................... 12, 13

27

*Dixon v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 336 (D. Mass. 2011)........................................ 7

28

*Fletcher v. OneWest Bank, FSB*, 798 F.Supp.2d 925 (N.D. Ill. 2011) ........................................ 11

-ii-

*Gibson v. World Savings & Loan Assn.*, 103 Cal.App.4th 1291, 128 Cal.Rptr.2d 19, 27 (4th Dist. 2002) ................................................................................................................................ 7

*Hollins v. Recontrust, N.A.*, 2011 WL 1743291 (C.D. Cal. May 6, 2011) ..................................... 6

*Ibarra v. Loan City*, 2010 WL 415284 (S.D. Cal. Jan. 27, 2010) .................................................. 8

*Immigrant Assistance Project of the Los Angeles County Federation of Labor (AFL–CIO) v. Immigration and Naturalization Service*, 306 F.3d 842 (9th Cir. 2002) ..................................... 4

*In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 WL 2637222 (D. Mass. July 6, 2011) ............................................................................... 18

*In re Coleman*, 560 F.3d 1000 (9th Cir. 2009) ............................................................................... 4

*In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638 (7th Cir. 2007) ............. 7

*In re Ossman*, 2012 WL 315485 (C.D. Cal. Jan. 31, 2012) ........................................ 18, 21, 22, 23

*Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 4526085 (C.D.Cal. Sept. 28, 2011) ..................... 11

*Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009) .................................................................. 4

*Mandrigues v. World Sav., Inc.*, 2008 WL 1701948 (N.D. Cal. Apr. 9, 2008) .......................... 7, 8

*Manzano v. Metlife Bank N.A.*, 2011 WL 2082049 (E.D. Cal. May 25, 2011) .............................. 6

*Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ................................... 14

*McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, Cal.Rptr.3d 227 (2006) .................... 7

*Mount v. Wells Fargo Bank, N.A.*, 2008 WL 5046286 (C.D. Cal. Nov. 24, 2008) ...................... 15

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 85 Cal.Rptr.2d 18 (1999) .... 13, 14

*Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App. 4th 1499, 135 Cal. Rptr. 3d 442, (2011), as modified (Dec. 1, 2011) ............................................................................................. 21

*Parmer v. Wachovia*, 2011 WL 1807218 (N.D. Cal. Apr. 22, 2011) ........................................ 9, 10

*Patel v. Liebermensch*, 45 Cal. 4th 344, 86 Cal.Rptr.3d 366 (2008) ........................................... 22

*Patterson v. Clifford F. Reid,* 132 Cal.App. 454, 23 P.2d 35 (1933) ............................................ 19

*Poco v. Wachovia Mortg. Corp.*, 2011 WL 2633298 (N.D. Cal. July 5, 2011) ............................ 10

*Remo v. Wachovia Mortg.*, 2011 WL 3448234 (N.D. Cal. Aug. 5, 2011) .................................... 10

*Reyes v. Downey Savings & Loan Assn.*, 541 F.Supp.2d 1108 (C.D. Cal. 2008) ........................... 8

*Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 (N.D.Cal. Jan. 3, 2011) ................ 3, 17, 18, 22

*Runyan v. Pacific Air Industries, Inc.*, 2 Cal.3d 304, 85 Cal.Rptr. 138 (1970) ........................... 25

*Russell v. Union Oil Co.,* 7 Cal.App.3d 110, 86 Cal.Rptr. 424 (Ct. Cal.App. 1970) .................... 19

*Senter v. JPMorgan Chase Bank, N.A.*, 810 F.Supp.2d 1339 (S.D. Florida 2011) ...................... 23

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ..................................................... 7

*Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal.App.4th 700, 113 Cal.Rptr.2d 399
   (2001) ........................................................................................................................................ 17

*Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011)... 18, 21, 22, 23

*Vinal v. Wells Fargo Bank, N.A*, 2011 WL 4344169 (N.D. Cal. Sept. 15, 2011)........................... 9

*Wigod v. Wells Fargo Bank, N.A.*, -- F.3d --, 2012 WL 727646 (7th Cir. Mar. 7, 2012) ........ passim

*Wilson v. Hewlett-Packard Co*., -- F.3d --, 2012 WL 502442 (9th Cir. Feb. 16, 2012) ................. 3

*Wyeth v. Levine,* 555 U.S. 555 (2009) .......................................................................................... 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir.2006) .... 4

**Statutes, Rules, and Regulations**

12 C.F.R. § 34.4 ........................................................................................................................... 6, 7

12 C.F.R. § 560.2 ............................................................................................................................ 7

12 U.S.C. § 1462a ........................................................................................................................... 6

Cal. Civ. Code § 1691 ................................................................................................................... 24

Cal. Civ. Code § 1788.17 .............................................................................................................. 18

California Bus. & Prof. Code §17200 *et seq*.......................................................................... 8, 12, 16

Fed.R.Civ.P. 15 ....................................................................................................................... 18, 24

Fed.R.Civ.P. 9(b) .......................................................................................................................... 18

National Bank Act, 12 U.S.C. § 1 *et seq*..................................................................................... 6, 7

**Other Authorities**

Corbin on Contracts (1960 ed.)..................................................................................................... 22

OTS Letter 96-14, 1996 WL 767462 (Dec. 24, 1996) .................................................................... 8

## INTRODUCTION AND ARGUMENT SUMMARY

When the Great Recession began, homeowners like Plaintiffs Vicki and Richard Sutcliffe sought modification of their mortgage loans so that they would not lose their homes as they weathered tough economic times.  As alleged in the Complaint, Defendant Wells Fargo Bank N.A. ("Wells Fargo") purported to offer borrowers loan modification and forbearance plans that turned out to be illusory. After promising that, upon receipt of a limited number of trial plan payments and certain representations from the borrowers, it would provide a permanent loan modification, Wells Fargo proceeded to take borrowers' money for months, even years, only to deny the promised loan modification, declare the loan to be in default, and initiate foreclosure proceedings anyway.  Homeowners who could have salvaged their homes, or moved on, lost even more.  Plaintiffs bring this action on behalf of themselves and others similarly situated seeking damages and other relief for Wells Fargo's breach of its promises and, under California's Unfair Competition Law ("UCL"), for its fraudulent and unfair conduct. Wells Fargo moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiffs' claims on a variety of grounds, none of which has merit.

This action does not stand alone:  borrowers all over the country have asserted similar claims against Wells Fargo and other lenders who engaged in similar unscrupulous practices. Dozens of federal district court cases – many, as is apparent from the Table of Authorities in Defendant's brief, involving Wells Fargo itself -- have addressed the validity of claims similar to those asserted here, in some instances involving the identical documentation at issue in this case. These courts have reached different conclusions on several significant issues, including issues raised by Wells Fargo in its motion here.  On March 7, 2012, the United States Court of Appeals for the Seventh Circuit issued what appears to be the first federal circuit Court of Appeals decision addressing many of the issues presented here.  *See Wigod v. Wells Fargo Bank, N.A.*, -- F.3d --, 2012 WL 727646 (7th Cir. Mar. 7, 2012).  Because *Wigod* also involves Wells Fargo, and because it appears from the Seventh Circuit opinion that the documents at issue there were identical , or virtually so, to the documents involved in this case, Wells Fargo made essentially the same arguments to the Seventh Circuit that it has made on this motion to dismiss.  The

1   Seventh Circuit rejected them all and reversed the decision of the district court that had dismissed

2   claims parallel to those asserted here.

3       The *Wigod* court held that state law remedies are not preempted by the federal Home

4   Affordable Mortgage Program ("HAMP") and that HAMP presents no barrier to the enforcement

5   of state law.  It found that the Trial Period Plan ("TPP") that Wells Fargo sent to borrowers, in

6   which it undertook to provide a permanent modification if borrowers met certain limied

7   conditions, could properly form the basis of claims for breach of contract.  It did so, moreover, in

8   a carefully reasoned decision spanning 75 pages (in the slip opinion) which surveyed the cases

9   that have addressed these issues, weighing the approaches of various courts, but ultimately

10  concluding that Wells Fargo's arguments lacked merit.

11      This Court should follow the Seventh Circuit in rejecting Wells Fargo's arguments about

12  HAMP preemption and about the TPP agreement, for precisely the reasons set forth in that

13  scholarly decision. Wells Fargo also raises a number of arguments not addressed in *Wigod*, but

14  these arguments are no better reasoned and should also be rejected.

15      First, Wells Fargo argues that Plaintiffs' claims are not ripe, apparently on the theory that

16  until Plaintiffs have actually lost their home, they have not been injured.  But Wells Fargo

17  breached its agreement and defrauded Plaintiffs two years ago when it failed to offer them a

18  permanent loan modification after they complied with all the terms of the TPP.  That claim is ripe

19  now.  Second, Wells Fargo argues that the National Bank Act preempts Plaintiffs' claims. But

20  that statute has no effect on state laws of general application that only incidentally affect lending

21  practices.  Here, Plaintiffs do not seek to dictate the terms on which Wells Fargo ought to have

22  offered loan modifications. Rather, Plaintiffs allege only that Wells Fargo was obligated to tell

23  the truth about what its terms and procedures were, and was precluded from entering into a

24  contract it had no intention of performing.  Numerous courts have held that such claims, invoking

25  the obligation of all business, including banks, to deal honestly, have only an incidental effect on

26  lending practices and thus are not preempted.

27      Wells Fargo also claims that Plaintiffs, who do not reside in California, may not sue under

28  the UCL.  But the California Supreme Court and Courts of Appeals have held that California law

1 | may properly be applied to claims of out-of-state residents when the conduct complained of took

2 | place in California.  Plaintiffs have sufficiently alleged, at this stage of the case, that Wells Fargo,

3 | operating from its principal place of business in San Francisco, acted within California, so that

4 | Plaintiffs may invoke the protections of the UCL.  Finally, Wells Fargo argues that Plaintiffs have

5 | not stated claims for relief under the UCL, but, like the allegations upheld by this Court in *Reyes*

6 | *v. Wells Fargo Bank, N.A.*, 2011 WL 30759 (N.D.Cal. Jan. 3, 2011),the Complaint in this case

7 | adequately alleges that Wells Fargo's practices were fradulent and unfair.  Defendant's motion

8 | should be denied in its entirety.

9 | ### APPLICABLE LEGAL STANDARD

10 | "On a motion to dismiss, all material facts are accepted as true and are construed in the

11 | light most favorable to the plaintiff."  *Wilson v. Hewlett-Packard Co.*,  -- F.3d --, 2012 WL

12 | 502442, *3 (9th Cir. Feb. 16, 2012).  "A complaint need not state 'detailed factual allegations,'

13 | but must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'

14 | *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2008).  A claim has facial

15 | plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16 | inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

17 | 662, 129 S. Ct. 1937, 1949 (2009).

18 | ### ARGUMENT

19 | **I.   PLAINTIFFS' CLAIMS ARE RIPE**

20 | Wells Fargo contends that this case is not ripe because the Sutcliffes have not been denied

21 | a loan modification, nor had their loan foreclosed.  This ignores the allegations of the Complaint;

22 | in fact, Plaintiffs allege that they have already received a denial of their application for a loan

23 | modification and further allege that they have received two Notices of Trustee Sale, pursuant to

24 | which their home may be sold at any time without further notice.  No more is required for their

25 | claims to be ripe.

26 | As the Ninth Circuit has explained, ripeness presents the issue "whether the harm asserted

27 | has matured sufficiently to warrant judicial intervention."  *Immigrant Assistance Project of the*

28 | *Los Angeles County Federation of Labor (AFL–CIO) v. Immigration and Naturalization Service*,

306 F.3d 842, 859 (9th Cir. 2002).  "Ripeness is intended to prevent the courts, through avoidance

of premature adjudication, from entangling themselves in abstract disagreements." *Maldonado v.*

*Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009).  In the context of a declaratory judgment action,

the court looks to "whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000 (9th

Cir. 2009).  Where a plaintiff challenges the legitimacy of a statute, actual prosecution under the

statute is not a prerequisite to render the claim ripe; rather, "a "genuine threat of enforcement is

sufficient to render a claim ripe for review." *Maldonado*, 556 F.3d at 1044.  *See also Addington*

*v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174 (2010) ("a litigant need not await the consummation of

threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.");

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th

Cir.2006) (per curiam) (challenge to enforceability of French court injunction was

constitutionally ripe even though enforcement of that injunction had yet to be sought).

Here, the allegations of the Complaint show that there is a genuine and substantial

controversy between the Sutcliffes and Wells Fargo and that the dispute between them is not

abstract.  In December, 2009, the Sutcliffes and Wells Fargo entered into a Trial Period Plan.

Complaint ¶ 27.  The TPP provided that the Sutcliffes would make three trial plan payments, in

January, February, and March, 2010. *Id.* at ¶ 28.  It further provided:  ""If I am in compliance

with this Loan Trial Period (the "Plan") and my representations in Section 1 continue to be true in

all material respects, then the Lender will provide me with a Loan Modification agreement. . . ."

No other conditions on the loan modification were set forth in the TPP. *Id.* at ¶ 31.  The Sutcliffes

made all three trial plan payments; their representations were true and continued to remain true.

*Id.* at ¶¶ 32-33.  Yet Wells Fargo did not provide them with a Loan Modification Agreement, as

promised.  Rather, after unilaterally extending their trial period so that the Sutcliffes made seven

trial plan payments instead of three, Wells Fargo informed the Sutcliffes in June, 2010 that it was

unable to offer them a loan modification at that time. *Id.* at ¶¶ 33-34.  That was a breach of the

parties' agreement for which the Sutcliffes may seek redress now.

1    Wells Fargo suggests that this dispute is not ripe because the bank has continued to dangle

2    in front of the Sutcliffes the possibility that it may someday offer them a loan modification,

3    although it has, in fact, already denied their application.  Complaint ¶¶ 35, 44-46.  But the

4    possibility of a future modification does not render this dispute unripe:  the Sutcliffes allege that

5    they were promised, or misled into believing, that they would receive a loan modification in 2010

6    after making three trial plan payments.  When they did not receive what they were promised when

7    they were promised it, their claim for deception and/or breach of contract was immediately ripe.

8    This is especially true because, despite the Sutcliffes' compliance with all of the terms of

9    the TPP, Wells Fargo has declared their loan to be in default. Complaint ¶¶ 34, 37, 44.  In

10   January, 2011, the Sutcliffes were notified that Wells Fargo had authorized an attorney to

11   commence foreclosure proceedings.  *Id.* at ¶ 46.  Indeed, the Sutcliffes have received two Notices

12   of Trustee's Sale, scheduling the sale of their home at public auction.  *Id.* at ¶¶ 46, 51.  It is hard

13   to see what more could be necessary to make this dispute ripe than the imminent loss of

14   Plaintiffs' home.[1]

15   The cases cited by Wells Fargo do not support its argument to the contrary.  In *Alexander-*

16   *Jones v. Wal-Mart Stores, Inc.,* 2012 WL 215171 (N.D. Cal. Jan. 24, 2012), the plaintiff claimed

17   that Wal-Mart breached its fiduciary duties by underpaying company contributions to its profit-

18   sharing and 401(k) plan; plaintiff alleged that the contributions were too low because the wages

19   on which they were based were themselves the result of gender discrimination that depressed

20   wages for female employees.  But no court had ever found that plaintiff's wages were lower as a

21   result of gender discrimination and the *Alexander-Jones* plaintiff did not sue for the alleged

22   underlying gender discrimination.  *Id.* at *2-3.   The court ruled plaintiff's ERISA claims were

23   dependent upon a determination that her wages had been wrongfully affected by discrimination

24   and that her claims were therefore unripe.  *Id*. at *3.  In *Alexander-Jones*, the claims were unripe

25   because plaintiff's legal theory was entirely hypothetical:  *if* Wal-Mart had engaged in gender

---

26   [1] That Wells Fargo may still offer Plaintiffs a permanent loan modification does not make this dispute

27   unripe.  A defendant may always offer to rectify the harm it has done, once it has been sued.  But that does
     not mean that plaintiffs must wait until it would be impossible for defendant to offer relief of any kind

28   before they can sue.

discrimination (which could not be adjudicated in the pending case), *then* it had also underpaid its contributions to the profit-sharing and 401(k) plans.  Here, by contrast, Plaintiffs allege that Wells Fargo has *already* engaged in wrongful conduct in representing that Plaintiffs would receive a permanent loan modification after three trial payments.  Wells Fargo's failure to do what it promised in the spring of 2010 is not hypothetical; it has already occurred and is actionable. [2]

## II.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

### A.   Plaintiffs' Claims Are Not Preempted by the National Bank Act

Wells Fargo argues that Plaintiffs' claims are preempted by regulations promulgated by the Office of the Comptroller of the Currency ("OCC"), pursuant to the National Bank Act, 12 U.S.C. § 1 *et seq.*, but provides only the most superficial analysis of the statute and its preemption provision.   A closer examination demonstrates that Plaintiffs' claims are not preempted.

The effect of the National Bank Act ("NBA") on the enforcement of state law in the context of real estate lending is set forth at 12 C.F.R. § 34.4.  Subsection (a) contains general language overriding state law and lists specific types of state laws that are expressly made not applicable to national banks. 12 C.F.R. 34.4(a).  Subsection (b) lists types of state laws that "are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers."  12 C.F.R. § 34.4(b).  Wells Fargo contends that this regulation is "substantially the same" as the preemption regulation adopted pursuant to the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1462a, and that "[a]ccordingly, the court's preemption analysis remains the same." *See* Wells Fargo Mem. at 24 n.25.[3]  Even assuming that to be true – although the relevant portion of the NBA regulations lacks the express preemption language found in their HOLA counterparts

---

[2] *Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) is similarly distinguishable.  There, counsel for both parties agreed that defendant's contractual obligation would not arise until a future date.  *Clinton*, 94 F.3d at 572.  Here, by contrast, Plaintiffs allege that Wells Fargo was obligated to review their application for a loan modification in good faith and in accordance with the terms of the TPP in early 2010.  Wells Fargo also cites *Manzano v. Metlife Bank N.A.*, 2011 WL 2082049 (E.D. Cal. May 25, 2011) and *Hollins v. Recontrust, N.A.*, 2011 WL 1743291 (C.D. Cal. May 6, 2011) for the proposition that a wrongful foreclosure claim is not ripe until a foreclosure has taken place. *See* Wells Fargo Mem.  at 9.  These cases have no applicability here because the Plaintiffs are not asserting a claim for wrongful foreclosure.

[3] NBA applies to national banking associations; HOLA applies to federal savings and loan associations.

1    -- case law and regulatory material show that claims like those asserted here are *not* preempted

2    under HOLA and thus, under Wells Fargo's own analysis, also are not preempted under NBA.

3          Like the NBA regulation at issue, the HOLA preemption regulation provides that federal

4    law does not override state laws that "only incidentally affect[s] . . . lending operations."  12

5    C.F.R. § 560.2(c).  Thus, "[o]nly claims that are specific to a defendant's lending activities, as

6    distinguished from legal duties applicable to all businesses, are preempted by HOLA."  *Cuevas v.*

7    *Atlas Realty/Fin. Services, Inc.*, 2008 WL 268981 (N.D. Cal. Jan. 30, 2008).  Thus, the Seventh

8    Circuit has found that HOLA "does not deprive persons harmed by wrongful acts of savings and

9    loan associations of their basic state common-law type remedies." *In re Ocwen Loan Servicing,*

10   *LLC Mortg. Servicing Litig.*, 491 F.3d 638, 643-44 (7th Cir. 2007). *See also Bertoli v. Wachovia*

11   *Corp., FSB,* 2011 WL 5244687,*3 (N.D. Cal. Nov. 3, 2011) (no preemption where plaintiffs'

12   claims were "not specific to a defendant's lending activities, but were, rather, based on legal

13   duties applicable to all businesses"); *Dixon v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 336 (D.

14   Mass. 2011) ("Enforcement of Wells Fargo's promise merely requires the lender to deal fairly and

15   honestly, which no more burdens those lending operations listed in paragraph (b) [of § 560.2]

16   than it does everyday business transactions"); *Ayala v. World Savings Bank*, 616 F.Supp.2d 1007,

17   1014 (C.D. Cal. 2009) (following *In re Ocwen*); *Mandrigues v. World Sav., Inc.*, 2008 WL

18   1701948 (N.D. Cal. Apr. 9, 2008) ("HOLA preserves the rights of states to regulate, for the

19   protection of consumers and others, the regular contract and commercial practices of lenders");

20   *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1482-88, 49 Cal.Rptr.3d 227 (2006)

21   (plaintiff's action "does not interfere with what the Bank may do, that is, how it may conduct its

22   operations; it simply insists that the Bank cannot misrepresent how it operates, or employ

23   fraudulent methods in its operations"); *Gibson v. World Savings & Loan Assn.*, 103 Cal.App.4th

24   1291, 1302, 128 Cal.Rptr.2d 19, 27 (4th Dist. 2002).[4]

25   _____

26   [4] All of these cases are consistent with the analysis of the Ninth Circuit in *Silvas v. E*Trade Mortg. Corp.*,
     514 F.3d 1001, 1005 (9th Cir. 2008), which sets forth a framework for HOLA preemption.   Under that

27   framework, where a state statute is not on the list of those expressly preempted, the court considers
     whether the law affects lending; if so, then the law is preempted unless it can  be clearly shown that it only

28   incidentally affects lending operations.

**PLTFS' P& A IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**

The Office of Thrift Supervision ("OTS"), which promulgated the HOLA regulations, itself similarly distinguished between state laws targeted at lending activities and those regulating the ethical practices of businesses generally. OTS found that Indiana's Deceptive Acts and Practices Statute was not preempted, because "the impact on lending appears to be only incidental to the primary purpose of the statute —the regulation of the ethical practices of all businesses engaged in commerce in Indiana" OTS Letter 96-14,1996 WL 767462 (Dec. 24, 1996) ("OTS 96-14"). Indeed, OTS noted, "because federal thrifts are presumed to interact with their borrowers in a truthful manner, Indiana's general prohibition on deception should have no measurable impact on their lending operations." OTS 96-14, *6. [5]

Moreover, courts that have addressed HOLA preemption specifically in the context of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, have found that UCL claims are *not* preempted to the extent that such claims are addressed to fraudulent practices and not to underlying lending activities. *See Bertoli*, 2011 WL 5244687,*1, 3; *Mandrigues*, 2008 WL 1701948, *2-3; *Reyes v. Downey Savings & Loan Assn.*, 541 F.Supp.2d 1108, 1115 (C.D. Cal. 2008) (finding HOLA does not preempt application of the UCL to principles of breach of contract and fraud in the inducement pertaining to alleged misrepresentations of material facts, as these principles are "not specific to lending activities" and "would require no affirmative action or type of representation by a lending institution."); *Ibarra v. Loan City*, 2010 WL 415284, *6 (S.D. Cal. Jan. 27, 2010) ("Plaintiff's [UCL] claim is not completely preempted to the extent it is based on [defendant's] alleged misrepresentation of the interest rate as lower than it actually was").

Here, Plaintiffs' claims are not preempted. Plaintiffs' claims do not implicate any of the activities regulation of which is presumptively over-ridden by § 34.4(a). Nor do Plaintiffs' claims have more than an incidental effect on lending practices. Rather, Plaintiffs allege that Wells Fargo falsely represented that its forbearance plans and modification proposals could prevent

---

[5] OTS' interpretations of the HOLA preemption regulation are entitled to deference as an agency's interpretation of its own regulation. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Casares-Castellon v. Holder*, 603 F.3d 1111, 1112-13 (9th Cir. 2010); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 931 (9th Cir. 2006).

1  foreclosure and falsely represented that borrowers would qualify for modification plans solely

2  through the submission of income verification and the requested payment. *See* Complaint ¶¶ 1,

3  17, 66-69, 76-78, 91. To the extent that the UCL precludes businesses from engaging in this kind

4  of fraudulent and deceptive conduct, the statute is not aimed primarily at the conduct of federal

5  banks, but rather at regulating the ethical conduct of businesses generally. There is no attempt to

6  regulate the substantive activities of banks (much less those practices related to actual lending),

7  nor to prescribe best practices for them. Compliance with the statute requires only that banks

8  "interact with their borrowers in a truthful manner," the type of law that OTS specifically found

9  not preempted. Similarly, Plaintiffs allege that Wells Fargo engaged in deceptive practices in

10 order to collect a debt it could not otherwise collect.  Complaint ¶¶ 20-21.  Again, Plaintiff seeks

11 only to hold Wells Fargo to account for having misrepresented what it was doing.

12        Wells Fargo, however, mischaracterizes the nature and substance of Plaintiffs' pleading,

13 arguing that Plaintiffs "purport to require Wells Fargo to provide them with a permanent

14 modification regardless of whether they qualify under the HAMP guidelines. . . ."  Wells Fargo

15 Mem. at 24.  But Plaintiffs do *not* allege that Wells Fargo was required to provide Plaintiffs with

16 a loan modification and do not purport to dictate Wells Fargo's criteria for doing so; rather,

17 Plaintiffs allege only that, if Wells Fargo required further analysis in order to determine whether

18 Plaintiffs qualified for a permanent modification, it was precluded from misrepresenting that,

19 subject to the most minor confirmation process, the borrower had in effect already qualified for a

20 modification. *See* Complaint ¶ 69.  Contrary to Wells Fargo's characterization, this case is not

21 about Defendants' criteria for loan modifications; it is about Defendants failure to tell borrowers

22 the truth about those criteria. State laws that require Wells Fargo not to misrepresent the truth are

23 not preempted.

24        None of the authorities Wells Fargo cites require a different result.  In *Vinal v. Wells*

25 *Fargo Bank, N.A*, 2011 WL 4344169 (N.D. Cal. Sept. 15, 2011), plaintiff's claims pertained to

26 Wells Fargo's "alleged failure to provide a loan modification or foreclosures alternatives," 2011

27 WL 4344169, *4, not to its misrepresentations about the terms on which it would do so.

28 Similarly, in *Parmer v. Wachovia*, 2011 WL 1807218 (N.D. Cal. Apr. 22, 2011), plaintiff alleged,

-9-

1    *inter alia*, that "defendant's business model and underwriting standards were also designed to

2    allow for the issuance of larger loans at origination," 2011 WL 1807218, *1, and thus related to

3    the bank's actual lending practices, not merely to its failure to live up to its word. *Poco v.*

4    *Wachovia Mortg. Corp.*, 2011 WL 2633298 (N.D. Cal. July 5, 2011) similarly involved

5    challenges to the bank's substantive practices, not its misrepresentations about those practices.

6    Wells Fargo also cites *Remo v. Wachovia Mortg.*, 2011 WL 3448234 (N.D. Cal. Aug. 5, 2011),

7    but neglects to mention that the same judge who decided *Remo* subsequently distinguished that

8    case in *Bertoli*, explaining:

9           [T]is case differs from *Remo* in that . . . [i]n *Remo*, the conduct underlying the

10          claims was largely related to Wachovia's lending practices—to the servicing of the

11          loan, the refusal to modify the terms of the loan, the crediting (or failure to credit)

12          payments made on the loan, etc. . . . Here, the allegations are limited to the bank's

13          failure to disclose their practices, as well as to a general duty to refrain from unfair

14          business practices—in other words, while *Remo* was a case arising from the

15          lending practices of Wachovia, the instant case arises from the bank's disclosures

16          and general business conduct, not strictly the lending practices themselves.

17   2011 WL 5244687, *3 (citation omitted).  Thus, the same court that found plaintiff's claims

18   preempted in *Remo* found the claims in *Bertoli* not preempted.  This Court should reach the same

19   conclusion here.

20          **B.    Plaintiffs' Claims Are Not Preempted by HAMP**

21          Wells Fargo also claims that Plaintiffs may not use state law claims to enforce the Home

22   Affordable Mortgage Program ("HAMP"), because Congress did not provide a private right of

23   action under HAMP.  It made the identical argument to the Seventh Circuit which rejected it as

24   novel, unsupported, and the product of confusion. In *Wigod*, the Seventh Circuit found that Wells

25   Fargo had improperly conflated a line of cases involving the existence of a federal private right of

26   action and an entirely different line of cases about federal preemption of state law.  2012 WL

27   727646,*24.  While the first line of cases cautions deference to Congress's decision as to whether

28   to create a private right of action, where the issue is "not whether federal law itself provides

-10-

1   private remedies, but whether it displaces remedies otherwise available under state law[,] [t]he

2   absence of a private right of action from a federal statute provides no reason to dismiss a claim

3   under a state law just because it refers to or incorporates some element of the federal law." *Id.*

4   Indeed, the Court pointed out, "[t]o find otherwise would require adopting the novel presumption

5   that where Congress provides no remedy under federal law, state law may not afford one in its

6   stead." *Id.*

7        Even where a state law claim refers or to otherwise incorporates federal law, the absence

8   of a private right of action is irrelevant to the enforcement of state law. Thus, the Seventh Circuit

9   held, "a state-law claim's incorporation of federal law has never been regarded as disabling,

10  whether the federal law has a private right of action or not." *Id.* at 26; *see also Bosque v. Wells*

11  *Fargo Bank, N.A.*, 762 F.Supp.2d 342, 351 (D. Mass. 2011) ("The fact that a TPP has a

12  relationship to a federal statute and regulations does not require the dismissal of any state-law

13  claims that arise under a TPP."); *Fletcher v. OneWest Bank, FSB,* 798 F.Supp.2d 925, 931 (N.D.

14  Ill. 2011) ("[There is no] general rule that where a state common law theory provides for liability

15  for conduct that is also violative of federal law, a suit under the state common law is prohibited so

16  long as the federal law does not provide for a private right of action."); *Kennedy v. Wells Fargo*

17  *Bank, N.A.*, 2011 WL 4526085, *1 (C.D.Cal. Sept. 28, 2011) (rejecting "end-run" argument).

18       As the Court in *Wigod* correctly noted, Wells Fargo's argument is simply preemption in

19  disguise.   The Court explained, "[w]e realize that Wells Fargo does not style its 'end-run' theory

20  as a preemption argument. But in the absence of any other doctrinal foundation for it, we see no

21  other way to classify it." *Id.* at *25. *See also Fletcher,* 798 F.Supp.2d at 931 ("the only

22  justification" for defendant's "end-run" argument "would be federal preemption of state law.").

23  But there is no basis for preemption here. As the Seventh Circuit found, HAMP neither expressly

24  nor impliedly preempts state law. *Wigod*, 2011 WL 2648606, *19-23; *see also Fletcher*, 798

25  F.Supp.2d at 930 (no HAMP preemption); *Kennedy*, 2011 WL 4526085, *1 (C.D.Cal. Sept. 28,

26  2011) (same).  Wells Fargo does not argue otherwise.

27       Moreover, as the *Wigod* Court pointed out, "the absence of a private right of action in a

28  federal statute actually weighs *against* preemption." 2012 WL 727646, *25 (emphasis in

-11-

1   original), *citing Wyeth v. Levine,* 555 U.S. 555, 574 (2009).  This is because the absence of a

2   private right of action has generally been thought to reflect Congress's choice to leave parties to

3   their state law remedies.  *See Wyeth*, 555 U.S. at 574.

4          Wells Fargo also cites *Astra USA, Inc. v. Santa Clara County*, --- U.S. ----, 131 S. Ct.

5   1342, 1345 (2011), but *Astra* is no help to it.  In *Astra,* county-operated medical facilities filed a

6   lawsuit against manufacturers of pharmaceutical products alleging that the manufacturers

7   overcharged them for pharmaceuticals.  The medical facilities, suing under a federal statute that

8   did not contain a private right of action, sought to rely upon a pricing agreement that existed

9   between the federal government and the pharmaceutical manufacturers.  The Court concluded that

10  the medical providers were not entitled to third party beneficiary status, because there was no

11  express intent under the pricing agreement to confer third party beneficiary status upon the

12  medical facilities.  *See also Wigod*, 2012 WL 727646, *29 n.4 (noting that "since Astra, district

13  courts have correctly applied the Court's decision to foreclose claims by homeowners seeking

14  HAMP modifications as third-party beneficiaries of SPAs," but further noting that claims brought

15  "not as third-party beneficiaries but as parties in direct privity with their lenders or loan servicers"

16  are legally distinct).

17         Unlike the plaintiffs in *Astra*, Plaintiffs are not seeking to enforce any of the requirements

18  of HAMP in their breach of contract claim and are not seeking third party beneficiary status as a

19  result of any SPA that exists between Wells Fargo and the federal government.  Instead, Plaintiffs

20  are attempting to enforce the terms of a contract that exists between them and Wells Fargo.

21  **III.    PLAINTIFFS' CLAIMS UNDER THE UCL, FOR BREACH OF CONTRACT, AND FOR**

22  **RESCISSION SHOULD NOT BE DISMISSED**

23         **A.    Plaintiffs May Sue Under California Law**

24         Wells Fargo claims that Plaintiffs may not sue under the UCL because they do not reside

25  in California. But that is not the law.  As the California Supreme Court explained in *Diamond*

26  *Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4[th] 1036, 1059 n.20 (1999), any presumption

27  against extraterritorial application of California law is "one against an intent to encompass

28  *conduct occurring in a foreign jurisdiction* in the prohibitions and remedies of a domestic state."

-12-

(Emphasis added.)  But such a presumption "has never been applied to an injured person's right to recover damages suffered as a result of an unlawful act or omission committed in California." *Id.* at 1059.  Thus, where the conduct at issue occurs in California, there is no bar to application of California law.  *Id.* at 1059-65.   Indeed, the court held in *Diamond*, California "has a clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country."  *Id.* at 1063.  It also "has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices."  *Id.* at 1064.  Thus, "[t]he lynchpin of the *Diamond* analysis is that state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California."  *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 224-25, 85 Cal.Rptr.2d 18, 24-25 (1999).

Wells Fargo does not disagree.  Indeed, it cites *Norwest Mortgage* for the proposition that "the UCL does not apply *to conduct occurring outside of California* and allegedly injuring non-residents."  Wells Fargo Mem. at 11 (emphasis added).   Thus, Wells Fargo itself recognizes that the issue is the extent to which the conduct alleged in the Complaint occurred in California.  That issue cannot, however, be resolved on this motion, because Plaintiffs have alleged sufficient conduct in California to preclude dismissal.

The Sutcliffes allege that Wells Fargo maintains its principal place of business in San Francisco, California.  Complaint ¶ 10.  They further allege that, when Wells Fargo offered them a TPP in December 2009, it directed them to make their Trial Plan payments to Wells Fargo Home Mortgage at an address in Los Angeles, California, and, in fact, that is where they sent those payments.  *Id.* at ¶¶ 27-29.  When, in May, 2009, Wells Fargo notified the Sutcliffes that, despite their timely payments under the TPP, their mortgage was in default, the notification was sent from a Wells Fargo office in California.  Complaint ¶ 34.  In June, 2010, Wells Fargo sent a second default letter; it, too, bore a Wells Fargo return address in California.  *Id.* at ¶ 37.   In October and November, 2010, the Sutcliffes received two more default letters from California; each letter instructed the Sutcliffes to send their payments to Wells Fargo in California.  *Id.* at ¶ 44.  Thus, as alleged in the Complaint, "much of the Wells Fargo communication with Plaintiffs either originated [from] or was directed [to]" California.  *Id.* at ¶ 55.  In addition, Plaintiffs allege

-13-

1    that "the common scheme referred to herein was conceived, approved, and implemented from

2    Defendants' California headquarters, where many or most of Wells Fargo's executives maintain

3    their offices. The common scheme was carried out from Wells Fargo's California headquarters, or

4    at the direction of personnel based there." *Id.*  Thus, Plaintiffs allege that, although they

5    themselves reside outside California, they were harmed by wrongful conduct that occurred there.

6         Under *Norwest Mortgage*, these circumstances are sufficient to permit Plaintiffs to invoke

7    California law.  There, plaintiffs alleged that the defendant had engaged in improper conduct in

8    connection with "forced placement insurance" ("FPI").  72 Cal.App.4th at 216.  Defendant's

9    principal place of business was in Iowa; all decisions regarding the FPI program were made at its

10   headquarters in Iowa or at its other principal facility in Minnesota; for much of the time period at

11   issue, the tasks relating to FPI were performed in entirely outside California.  For a brief period,

12   some FPI functions were carried out in California with respect to some mortgages, but before and

13   after that time, no functions relating to FPI were conducted in California.  *Id.* at 218.  The court

14   held that "non-California residents for whom Norwest Mortgage's conduct of purchasing FPI

15   occurred in California" could assert claims under the UCL, but that "non-California residents for

16   whom Norwest Mortgage's conduct of purchasing FPI occurred in states other than California"

17   could not.  *See also Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (1987) (where

18   "alleged fraudulent misrepresentations forming the basis of the claim of every Sprint subscriber

19   nationwide emanated from California," UCL applied to claims of non-California residents);

20   *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Ca. 2010) (because "Defendants

21   are headquartered in California and their misconduct allegedly originated in California,"

22   application of California consumer protection laws was appropriate.).

23        Wells Fargo cites *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.

24   2012), but *Mazza* is distinguishable.  In *Mazza*, plaintiffs sought recovery, for themselves and for

25   a nationwide class, for false advertising in connection with their purchases, in their respective

26   home states, of cars manufactured by the defendant.  Because the claims related solely to the

27   purchase of the cars, the only transaction between the defendant and each member of the plaintiff

28   class was the purchase itself, which took place in the plaintiff's home state.  Here, by contrast,

-14-

1    plaintiffs' claims pertain to their efforts to obtain a modification of their mortgage. That

2    transaction did not occur in the Sutcliffe's home state in the way that an automobile purchase can;

3    it was rather a series of transactions and correspondences in which Wells Fargo's actions took

4    place, at least in part, in California.

5         Wells Fargo claims that some of its correspondence with Plaintiffs emanated from states

6    other than California and claims that its "main office" is not in California.  *See* Wells Fargo Mem.

7    at 10 n.10, 11.  But these assertions merely highlight the inappropriateness of attempting to

8    determine, at this stage of the case, the extent to which Wells Fargo's conduct took place in

9    California.  This is especially true because the case that Wells Fargo cites in support of its

10   contention that its "main office" is in South Dakota hardly resolves the issue. Rather, the court in

11   *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 2382404, *2 (N.D. Cal. June 9, 2010), specifically

12   acknowledged that "Wells Fargo also maintains a principal place of business in San Francisco,

13   California and does business throughout the state."  Moreover, in *Mount v. Wells Fargo Bank,*

14   *N.A.*, 2008 WL 5046286, *1 (C.D. Cal. Nov. 24, 2008), the court found that Wells Fargo Bank

15   N.A. "regularly described its principal place of business as San Francisco, California," a

16   representation the court held it could not disclaim.

17        Wells Fargo also argues that this Court should disregard Plaintiffs' allegations concerning

18   Wells Fargo's activities in California because Wells Fargo characterizes these allegations as

19   "bald" and "conclusory."  Wells Fargo Mem. at 10 n.10.  This is not so:  Plaintiffs' allegation that

20   Wells Fargo's scheme was formed in California is supported by allegations that Wells Fargo's

21   principal place of business is in California (which Wells Fargo does not deny and which the

22   *DeLeon* case does not contradict) and that its executives – whom, it is reasonable to infer, were

23   the ones who formed the scheme – are located there.   Nor are plaintiffs required to plead more.

24   In *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011), this Court found that

25   general allegations concerning conduct at defendant's headquarters in California were sufficient,

26   at the pleading stage, to sustain the out-of-state plaintiff's claim under California law. Here, too,

27   plaintiffs' allegations about conduct emanating from California are sufficient to sustain the

28   Sutcliffes' California-based claim.

Wells Fargo also claims the Sutcliffes may not proceed under California law because, according to Wells Fargo, their only allegation of damage hinges on California's non-recourse statute, which does not apply to them. But that is not so. Plaintiffs do allege that Wells Fargo's scheme allows it to collect monies to which it is not entitled in a non-recourse state. But Plaintiffs also allege that "[e]ven in states that permit a deficiency judgment, the likelihood of collection of any deficiency judgment is quite small." Complaint ¶ 19. Thus, Plaintiffs allege that Wells Fargo uses fraudulent and deceptive practices to collect debts that it could not otherwise collect, whether as a matter of law or simply as a matter of fact.

### B.      Plaintiffs State a Claim Under the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice. . . . ." Cal. Bus. & Prof. Code § 17200. In *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999), the California Supreme Court confirmed the broad scope of the UCL to address unfair business practices. The Court held that "the unfair competition law's scope is broad. . . . . Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." 20 Cal.4th at 180, 83 Cal.Rptr.2d at 561. But the UCL does more than "borrow" from other laws:

> The statutory language referring to "any unlawful, unfair or fraudulent" practice . . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa.

*Id.*

Plaintiffs have sufficiently alleged that Wells Fargo's conduct was both "fraudulent" and "unfair." Plaintiffs allege that Wells Fargo has "falsely, deceptively, misleadingly, unfairly, and/or unconscionably advertised or otherwise induced consumers to make payments pursuant to a 'Trial Plan' or 'Forbearance-to-modification' by falsely, deceptively, or misleadingly

representing that a permanent modification on similar terms would be forthcoming," Complaint ¶ 68; that it "falsely, deceptively, misleadingly, unfairly, and/or unconscionably advertised or led consumers to believe that Defendants provide trial modification plans with the false representation that the borrower need only meet two conditions, payment of the trial period payments and submission of true representations," *id.* at ¶ 69; and that "[u]sing criteria other than those set forth in the Trial Plan, Defendants have then failed to offer a bona fide permanent modification." *Id.* As this Court has previously recognized, this sufficiently alleges fraudulent conduct within the meaning of the UCL. *See Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, *22 (N.D.Cal. Jan. 3, 2011) ("Plaintiffs allege that members of the public are likely to be deceived by the Cover Letter and Agreement that Wells Fargo sent to them. . . . the Court cannot say at this stage of the case that Plaintiffs will not be able to prevail on this claim." ).

Wells Fargo repeats its contention that this claim is unripe, but the repetition does nothing to strengthen the argument. Wells Fargo's other contention is that the documents do not misrepresent what Plaintiffs say they misrepresent. At this stage of the case, however, Plaintiffs' allegations must be accepted as true.

Plaintiffs also properly allege that Wells Fargo's practice was "unfair" within the meaning of the UCL. As this Court has explained:

> Under California law, the test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. An 'unfair' business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

*Reyes v. Wells Fargo*, 2011 WL 30759, *22 (citations omitted), *citing Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Plaintiffs sufficiently allege "unfair" conduct under this standard. *See Reyes v. Wells Fargo*, 2011 WL 30759, *22 (upholding claim under "unfair" prong of UCL).

Defendants argue that "plaintiffs cannot sustain a UCL claim on the ground that Wells

1   Fargo improperly collected reduced monthly payments" because there is no law that prohibits the

2   extraction of payments under a deed of trust *prior to* foreclosure.  Wells Fargo Mem. at 13.  But

3   the issue is not whether some law (other than the UCL) prohibits Wells Fargo's conduct – the

4   issue is whether that conduct was fraudulent or unfair.

5        Wells Fargo also claims that Plaintiff's allegations are not sufficient under the heightened

6   pleading standard of Fed.R.Civ.P. 9(b), but this contention is without merit.  The documents that

7   are alleged to be misleading and deceptive are adequately identified, and before the Court.  And

8   paragraphs 28, 30, 31 and 41 of the Complaint describe the misleading language specifically.  *See*

9   *Reyes v. Wells Fargo*, 2011 WL 30759, *21 (plaintiffs' allegations sufficient to satisfy Rule 9(b)

10  to the extent that the statements alleged to have been misleading were contained in a letter that is

11  not only identified but also attached to the  Complaint).[6]

12       **C.      Plaintiffs State a Claim for Breach of Contract**

13       Defendant also argues that Plaintiffs may not sue for breach of contract because, Wells

14  Fargo claims, the TPP is not an enforceable contract.  Wells Fargo is wrong.  In *Wigod*, the

15  Seventh Circuit reversed a district court dismissal of contract claims nearly identical to those

16  asserted here. [7]  In so doing, the Court of Appeals decisively rejected every one of the arguments

---

17  [6] Although Plaintiffs have not at this time alleged that Wells Fargo's conduct was unlawful, if the Court
18  finds that Plaintiffs have not properly pleaded a claim under the UCL, Plaintiffs seek leave, pursuant to
    Fed.R.Civ.P. 15, to replead in order to allege that Wells Fargo's conduct was also unlawful because it
19  violated California's Rosenthal Act, Cal. Civ. Code § 1788.17.  That the Sutcliffes may not, themselves,
    have a claim under the Rosenthal Act does not preclude a claim under the "unlawful" prong of the UCL
20  claim predicated on Wells Fargo' violation of that statute. *See Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042, 1048 (9th Cir. 2000) (consumers can pursue UCL claims even if the predicate statute does
21  not authorize a private cause of action).

22  [7] *Wigod* appears to be the first decision from a federal Court of Appeals addressing the precise language of
    the TPPs.  Prior to that ruling, there was a split of authority among the district courts that had considered
23  the question.  Indeed, in *Wigod*, the Seventh Circuit identified "more than 80 other federal cases in which
    mortgagors brought claims" relating to HAMP loan modifications.  2012  727646, *29 n.4.  The Court
24  noted that in about 50 of these cases, including cases in which plaintiffs asserted other legal theories not at
    issue here, courts granted motion to dismiss, while in approximately 30 cases, courts denied such motions
25  and permitted the cases to proceed.  In its memorandum to this Court, Wells Fargo cited decisions that
    supported its position, while omitting the cases, including at least six cases decided within the past 15
26  months, that found the same or similar language to constitute an enforceable contract.  *See In re Ossman*,
    2012 WL 315485 (C.D. Cal. Jan. 31, 2012); *Darcy v. CitiFinancial, Inc.* 2011 WL 3758805 (W.D. Mich.
27  Aug. 25, 2011); *In re Bank of America Home Affordable Modification Program (HAMP) Contract
    Litigation*, 2011 WL 2637222 (D. Mass. July 6, 2011); *Turbeville v. JPMorgan Chase Bank*, 2011 WL
28  7163111 (C.D. Cal. Apr. 4, 2011); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 (N.D.

*(footnote continues on next page)*

-18-

1    that Wells Fargo offers here. This Court should do the same.

2          The first sentence of the TPP states:  "If I am in compliance with this Loan Trial Period

3    and my representations in Section 1 continue to be true in all material respects, then the Lender

4    will provide me with a Loan Modification Agreement, as set forth in Section 3 that would amend

5    and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

6    Complaint ¶ 31.  Plaintiffs allege that the TPP was an enforceable agreement and that they fully

7    performed under the agreement, because they made the requisite payments in compliance with the

8    Trial Plan and because the representations in Section 1 were and remained true.  *Id.* at ¶ 77.  They

9    further allege that "[n]otwithstanding Plaintiffs' full compliance with the terms of the Trial Plan,

10   Defendants did not provide a loan modification agreement. This was a breach of the agreement."

11   *Id.* at ¶ 78.   Defendant contends that there was no agreement, because, it argues, the TPP lacks

12   three elements of a contract – mutual assent, definitive terms, and consideration.  Wells Fargo

13   also claims that, even if there was a breach, Plaintiffs suffered no damage. As described below,

14   none of these arguments has merit and all were rejected by the Seventh Circuit in *Wigod*.

15                    *1.       The TPP Reflects Mutual Assent*

16         The consent of the parties, or mutual assent, "is accomplished when a specific offer is

17   communicated to the offeree, and an acceptance is subsequently communicated to the offeror.

18   *Russell v. Union Oil Co.,* 7 Cal.App.3d 110, 114, 86 Cal.Rptr. 424 (Ct. Cal.App. 1970); *Patterson*

19   *v. Clifford F. Reid,* 132 Cal.App. 454, 456, 23 P.2d 35 (1933).  Defendant claims that the TPP

20   cannot be an offer that can be accepted solely by Plaintiff's compliance with the trial period

21   payments because, according to Wells Fargo, the offer was contingent on other occurrences.  In

22   *Wigod*, the Seventh Circuit rejected precisely this argument, finding that Wells Fargo's

23   interpretation was "not a reasonable reading of the TPP."  2012 WL 727646, *6.  In the language

24   quoted above, the TPP sets forth only two conditions with which Plaintiffs had to comply in order

25   for Wells Fargo to offer them a loan modification.  As the Seventh Circuit explained:

26   Cal. Mar. 28, 2011); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011).  As
     described in the text, the cases that have upheld contract claims arising from the TPP, including the
27   Seventh Circuit's decision in *Wigod*, are better reasoned that those that have not and provide better
     guidance for this Court.
28

> [T]he TPP spelled out two conditions precedent to Wells Fargo's obligation to offer a permanent modification: Wigod had to comply with the requirements of the trial plan, and her financial information had to remain true and accurate. But these were conditions to be satisfied by the promisee (Wigod) rather than conditions requiring further manifestation of assent by the promisor (Wells Fargo). These conditions were therefore consistent with treating the TPP as an offer for permanent modification.

*Wigod,* 2012 WL 727646, *7. Thus, the *Wigod* court concluded, "when Wells Fargo executed the TPP, its terms included a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain." *Id.*

Wells Fargo claims, however, that Section 2G of the Sutcliffes' agreement overrides the plain language of the offer; this argument, too was squarely rejected in *Wigod.* Section 2G provides: "I understand that the Plan is not a modification of the loan documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. . . ." TPP §2G. Confronted with the same language and the same argument, the Seventh Circuit held:

> Wells Fargo's proposed reading of section 2 would nullify other express provisions of the TPP Agreement. Specifically, it would nullify Wells Fargo's obligation to "send [Wigod] a Modification Agreement" if she "compl[ied] with the requirements" of the TPP and if her "representations ... continue to be true in all material respects." TPP § 3. Under Wells Fargo's theory, it could simply refuse to send the Modification Agreement for any reason whatsoever—interest rates went up, the economy soured, it just didn't like Wigod—and there would still be no breach. Under this reading, a borrower who did all the TPP required of her would be entitled to a permanent modification only when the bank exercised its unbridled discretion to put a Modification Agreement in the mail. In short, Wells Fargo's interpretation of the qualifying language in section 2 turns an otherwise

-20-

1   straightforward offer into an illusion.

2   The more natural interpretation is to read the provision as saying that no

3   permanent modification existed "unless and until" Wigod (i) met all conditions,

4   (ii) Wells Fargo executed the Modification Agreement, and (iii) the effective

5   modification date passed. Before these conditions were met, the loan documents

6   remained unmodified and in force, but under paragraph 1 and section 3 of the TPP,

7   Wells Fargo still had an obligation to offer Wigod a permanent modification once

8   she satisfied all her obligations under the agreement. This interpretation follows

9   from the plain and ordinary meaning of the contract language stating that "the Plan

10  is not a modification ... unless and until" the conditions precedent were fulfilled.

11  TPP § 2.G. And, unlike Wells Fargo's reading, it gives full effect to all of the

12  TPP's provisions. Once Wells Fargo signed the TPP Agreement and returned it to

13  Wigod, an objectively reasonable person would construe it as an offer to provide a

14  permanent modification agreement if she fulfilled its conditions

15  2012 WL 727646, *8 (citations omitted).  *See also Turbeville*, 2011 WL 7163111, * 3 (TPP an

16  enforceable contract even though it contained an additional contingency referencing the

17  possibility that lender would determine borrower did not qualify for modification); *In re Ossman*,

18  2012 WL 315485, *4; *Darcy*, 2011 WL 3758805, *6.

19  Wells Fargo relies on *Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App. 4th 1499,

20  1504, 135 Cal. Rptr. 3d 442, 446 (2011), as modified (Dec. 1, 2011), for its contrary argument,

21  but that case is poorly reasoned and distinguishable. In *Nungaray*, plaintiffs made their plan

22  payments, but failed to provide the necessary information required under section 1; the bank

23  foreclosed and sold their home. With no analysis, the court concluded, "Under the circumstances,

24  principles of equitable estoppels do not apply because neither Litton nor the Bank led the

25  Nungarays to believe that a permanent loan modification was forthcoming."  This Court should

26  not follow *Nungaray* because the facts are distinguishable, and because its lack of analysis makes

27  the case unpersuasive. Nor should the Court follow the host of district court cases cited by Wells

28  Fargo, the reasoning of all of which was rejected by the Seventh Circuit on this point.  Instead,

-21-

this Court should adopt the reasoning of *Wigod*, and the district court cases, such as *Turbeville*, *In re Ossman*, and *Darcy*, that anticipated it.[8]

    2.  *The TPP Was Sufficiently Definite*

  Wells Fargo also argues that the TPP "contain[s] none of the definitive terms that reflect an agreement to permanently modify plaintiffs' loan and that could be enforced by the Court." This argument, too, was rejected by the Seventh Circuit in *Wigod*.  The court recognized that the trial period terms were only an estimate of the terms of a permanent modification and that "Wells Fargo had some limited discretion to modify permanent terms based on its determination of the "final amounts of unpaid interest and other delinquent amounts."  2012 WL 727646, *9. But this did not prevent the TPP from being sufficiently definite to be a binding contract because HAMP guidelines provided an "'existing standard' by which the ultimate terms of Wigod's permanent modification were to be set." *Id.*, *citing* 1 Corbin on Contracts § 95, at 402 (1960 ed.); *see also Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199, 209, 45 Cal. Rptr. 3d 692, 699 (2006). As the Court noted, "Although Wells Fargo may have had some limited discretion to set the precise terms of an offered permanent modification, it was certainly required to offer some sort of good-faith permanent modification to Wigod consistent with HAMP guidelines. It has offered none." *Wigod*, 2012 WL 727646, *10; *see also Turbeville*, 2011 WL 7163111, *3; *3; *Ansanelli*, 2011 WL 1134451, *5.

  It is worth noting, as well, that the California Supreme Court has held that "the law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if they can be ascertained."  *Patel v. Liebermensch*, 45 Cal. 4th 344, 349, 86 Cal.Rptr.3d 366, 369 (2008).  The *Wigod* decision is consistent with this principal.

---

[8] Defendants' arguments that the "conditional" language of the Forbearance Plans precludes a claim for breach of contract relative to those plans, *see* Wells Fargo Mem. at 15, 17, 20 n.21, *citing, inter alia, Reyes v. Wells Fargo*, 2011 WL 30759, *15, miss the point.  Even if Wells Fargo's conduct with respect to the Forbearance Plans may not, standing alone, amount to breaches of additional contracts, its conduct relative to the Forbearance Plans supports the claim that it violated the covenant of good faith and fair dealing implicit in the TPP.  This conduct is also evidence of Wells Fargo's course of conduct in dealing with Plaintiffs and its intention indefinitely to string them along without offering a modification.

3.        *Wells Fargo's Promises Were Supported by Consideration*

Finally, Defendant argues that the claim must be dismissed because the three month trial period agreement had no consideration.  This argument should be rejected.

"Under California law, consideration exists even if the performance due "consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire.  It is enough that some small additional performance is bargained for and given.... [It is sufficient] if the act or forebearance given or promised as consideration differs in any way from what was previously due.  Furthermore, "consideration may be either a benefit conferred upon the promisor or a detriment suffered by the promisee." *Ansanelli*, 2011 WL 1134451, *4.  In *Wigod*, the Seventh Circuit found that Wells Fargo's promises in the TPP were supported by consideration because "(the promisee) incurred cognizable legal detriments."  2012 WL 727646, * 8. The Court elaborated:

> By signing [the TPP], Wigod agreed to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information. Wigod's complaint alleges that she did more than simply agree to pay a discounted amount in satisfaction of a prior debt. In exchange for Wells Fargo's conditional promise to modify her home mortgage, she undertook multiple obligations above and beyond her existing legal duty to make mortgage payments. This was adequate consideration.

*Wigod*, 2012 WL 727646, * 8; *see also Turbeville*, 2011 WL 7163111, *2 ("in order to comply with the trial, they had to submit financial documents in addition to other TPP requirements. Plaintiffs previously were not required to submit these documents. Because consideration encompasses any detriment to the promisee, no matter how small, Plaintiffs adequately plead consideration for the TPP Agreement."); *In re Ossman*, 2012 WL 315485, *4-5; *Bosque*, 762 F.Supp.2d at 351-52; *Ansanelli*, 2011 WL 1134451, *4.

Wells Fargo relies on *Senter v. JPMorgan Chase Bank, N.A.*, 810 F.Supp.2d 1339 (S.D. Florida 2011), but there the court simply disagreed that the obligation to provide additional documentation could constitute consideration but provided no basis for its reasoning.  This Court

-23-

1    should follow the Seventh Circuit's decision in *Wigod* instead.

2           *4.      Plaintiffs Sufficiently Allege Damages*

3          In addition to arguing that the contract was unenforceable, Wells Fargo also argues that

4    Plaintiffs suffered no damage from any breach.  Defendant argues that the reduced monthly

5    payments they made to Wells Fargo during the pendency of the plans do not constitute

6    recoverable damages, and therefore any claim for contract must be dismissed.  Wells Fargo Mem.

7    at 19-20.  But this argument ignores the very nature of Plaintiff's claim, that Defendant breached

8    the TPP by not putting forth a new contract for permanent loan modification by April 1, 2010,

9    and subsequently made the trial payments through July 2010, and further payments thereafter.

10   "As a result of this prolonged 'trial period', the Sutcliffes paid many thousands of dollars while

11   waiting to hear from Defendants about their modification." Compl. ¶ 33.  Had Defendant

12   provided them a permanent loan modification agreement, they would not have been paying the

13   futile trial payments for an extended time.

14         In *Wigod*, the Seventh Circuit found that plaintiffs sufficiently alleged damages arising

15   from Wells Fargo's breach, because plaintiffs alleged that "she incurred costs and fees, lost other

16   opportunities to save her home, suffered a negative impact to her credit, never received a

17   Modification Agreement, and lost her ability to receive incentive payments during the first five

18   years of the modification."  2012 WL 727646, *18. The Court found plaintiffs' allegations of

19   damages to be "at least plausible." This Court should reach the same conclusion.[9]

20       **D.    Plaintiffs State a Claim for Rescission**

21         Wells Fargo also asks this Court to dismiss Plaintiffs' claim for rescission, on the ground

22   that rescission is not a stand-alone cause of action.  *See* Wells Fargo Mem. at 20.  Wells Fargo

23   misapprehends both the law and the nature of Plaintiffs' pleading.

24         Pursuant to Cal. Civ. Code § 1691, a party may unilaterally rescind a contract by giving

25   notice of the rescission and offering to restore everything of value which he had received.  *See*

26   

27   [9] To the extent that the Complaint does not sufficiently allege Plaintiffs' damages, Plaintiffs seek leave to
amend pursuant to Fed.R.Civ.P. 15.  If granted leave, Plaintiffs would allege, *inter alia,* that Wells Fargo's

28   failure to honor the terms of the TPP has had an adverse impact on their credit rating.

*also Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862 (2010) (recognizing statutory procedure for rescission); *Runyan v. Pacific Air Industries, Inc.*, 2 Cal.3d 304, 311, 85 Cal.Rptr. 138 (1970) (describing history and codification of unilateral rescission).  The rescinding party may then, if necessary, sue to enforce the already-accomplished rescission.  *Runyan,* 2 Cal.3d at 311.  Here, Plaintiffs have properly invoked unilateral rescission.  Paragraph 88 of the Complaint states:

> NOTICE OF RESCISSION: In the alternative, Plaintiffs and Class, by service of this Class Action Complaint on Defendant Wells Fargo, hereby provide notice to Defendants, their subsidiaries and affiliates that the Trial Plans and the Forbearance Plans described in this Complaint are subject to rescission and are hereby rescinded for the reasons set forth herein.

This notice complies with § 1691.  Moreover, having escinded the contract through this notice, Plaintiffs may seek to enforce their rescission.  Their Third Claim for Relief, although perhaps inartfully styled, should be deemed to do exactly that.  In the alternative, Plaintiffs' claims should be deemed one for fraud, seeking rescission as a remedy for that fraud.  Wells Fargo's arguments that Plaintiffs may not seek rescission as a remedy for fraud should be rejected for the same reasons that its argument for dismissal of Plaintiffs' claims under the UCL fail.[10]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and motion to strike should be denied in their entirety.

Dated:  March 9, 2012                           Respectfully submitted,

                                                SIMMONS BROWDER GIANARIS
                                                ANGELIDES & BARNERD LLC


                                       By:   /s/  Derek Y. Brandt
                                             Derek Y. Brandt (*pro hac vice*)

---

[10] To the extent that Plaintiffs reference restitution in their claim for rescission, they refer only to the restitution that accompanies rescission; Plaintiffs do not assert a stand-alone claim for restitution based on unjust enrichment.  Although the Prayer for Relief does seek restitution separate from rescission of the contract, that relief arises from Plaintiffs' claims under the UCL.

dbrandt@simmonsfirm.com
Emily J. Kirk (*pro hac vicei*)
ekirk@simmonsfirm.com
Anna M. Kohut (*pro hac vice*)
akohut@simmonsfrrm.com
One Court Street
Alton, Illinois 62002
Tel: (618) 259-2222
Fax: (618) 259-2251

Deborah Rosenthal (SBN 184241)
drosenthal@simmonsfirm.com
SIMMONS BROWDER GIANARIS ANGELIDES
   & BARNERD LLC
455 Market Street, Suite 1150
San Francisco, CA  94105
Phone:  (415) 536-3986   /Fax: (415) 537-4120

James M. Terrell (*pro hac vice*)
jterrell@mmlaw.net
MCCALLUM METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205
Tel: (205) 939-0199

Bradford D. Barron (*pro hac vice*)
bbarron@gbbfrrm.com
Zachary T. Barron (*pro hac vice*)
zbarron@gbbfirm.com
GIBBON, BARRON & BARRON, P.L.L.C.
20 East 5th Street, Suite 1000
Tulsa, Oklahoma 74103
Tel: (918) 745-0687
Fax: (918) 745-0821

Andrea Bierstein (*pro hac vice app. to be submitted*
abierstein@hanlyconroy.com
Mitchell Breit (*pro hac vice app. to be submitted* )
mbreit@hanlyconroy.com
HANLY CONROY BIERSTEIN SHERIDAN FISHER
   & HAYES LLP
112 Madison Ave., 7th Floor
New York, New York 10016
Tel:  (212) 784-6400
Fax:  (212) 213-5949

*Attorneys for Plaintiffs Vicki and Richard Sutcliffe
and all others similarly situated*

-26-